## SOLOMON SOWARDS

*v.*

## SARAH ANN SOWARDS.

SETTLEMENT—*whether established by proof in particular case.* In a suit on a note, the defense set up was that it was paid in a settlement previously made between plaintiff and defendant. It appeared that in August the parties made an agreement by which the defendant agreed to sell to the plaintiff four interests or shares in a tract of land which he claimed to own, one by inheritance and three by purchase from other heirs of a deceased brother, for $1,800, and all suits, including one pending on the note in controversy, were to be settled. In September following the parties met, and, the defendant being able to convey only three shares of said land instead of four, the contract was changed, and the plaintiff took a conveyance of the three shares and gave her two notes to defendant, one for $950, one for $300, and $200 in cash, with the understanding, as she testified, that she should surrender the note in controversy and receive a credit for the amount of it on the $950 note, but defendant testified that he was to receive the note in controversy in addition to the three notes, making the amount about equal to what he was to receive for the four shares; he claimed that in addition to the three shares in the land, he had sold the same number of shares in the personal estate of his deceased brother. It also appeared that his brother had left a widow who was entitled to the whole of his personal estate: *Held,* that the jury were warranted in finding that the note in controversy was not to be given up except when the amount thereof was credited on the $950 note, and that having been assigned and the plaintiff having paid it to the assignee, she was entitled to recover on the note in controversy.

APPEAL from the Circuit Court of Marshall county.

Messrs. BANGS, SHAW & EDWARDS, and Mr. G. L. SIMPSON, for the appellant.

Messrs. BARNES & MUIR, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

Appellee brought an action of assumpsit, in the Marshall circuit court, against appellant, on a promissory note dated December 26th, 1868, for $285, due in twelve months from date, with ten per cent interest. On the 2d of February, 1870, there was indorsed a credit of $28.40 on the note. A plea of *non assumpsit* was filed. A trial was had before the court and a jury, resulting in a verdict in favor of plaintiff for $432.95, and the court, after overruling a motion for a new trial, rendered judgment on the verdict, and defendant has appealed.

It was set up as a defense, that the parties had a general settlement of all matters between them on the 19th of September, 1872, and that this note was included therein. It appears that prior to, and at that time, several suits were pending between the parties, and amongst them one on this note. Before this settlement was consummated, on the 20th of the previous August, the parties had met at Chillicothe, and appellant gave to appellee a written agreement, by which he undertook to convey four shares of the farm on which appellee resided. The agreement recited that she was to pay him $1800 therefor. It recited that the parties had agreed to dismiss all suits against each other, at their own costs. It also appears that a brother of appellant had died, leaving a widow, but no children or descendants of children, owning a farm, which descended to his widow, appellee, the mother, and his brothers and sisters, of whom appellant was one. He claimed to own four shares that had been thus inherited, one in his own right and three that he had purchased of other heirs, and these shares are those he agreed to convey to appellee; but when they met in September, and settled, he was unable to control but two shares, and procured a conveyance of another share to her by James Sowards, for which she gave him her note for $300. The real estate was estimated at $6000, and the personal estate at $1500, which was left by the deceased brother of appellant and the son of appellee. The half of the real estate descended to his widow, as he died intestate, and the other half was subject to

the widow's dower, and the personal property all became hers after the payment of the debts. There were seven brothers and sisters, and appellee, his mother—making, in all, nine shares, which would leave the shares subject to the widow's dower, and probably worth, each, less than $300, and the personal estate, if any after paying debts, became the property of the widow.

At the settlement in September, on the conveyance of the two shares by appellant and the one by James Sowards, appellee gave the latter her note for $300. She also paid to appellant $200 in money, and gave to him her note for $950, and he claims this note was included as a part of the price agreed to be paid for these shares, and also a small note of $35 which appellee held against appellant. All these sums would aggregate about $1790, a trifle less than the agreement of August 20, entered into at Chillicothe. Appellant also claims that he sold appellee, at that time, and as a part of the transaction, three shares in the personal estate of his deceased brother, worth $500, as he claims.

It is manifest that the August agreement was departed from when the parties settled in September. As appellant only conveyed two shares, and procured his brother to convey another, which made three only, when four were to have been conveyed, there was a material change in that respect; and this change having been made, others may be presumed to have occurred. Now, if appellee purchased of James his share, and gave her note to appellant for $950, and paid him $200 in money and the $35 note, for his two shares, it would be paying him at the rate of over $590 per share—$142 on each more than was agreed in August; but if, as appellee testifies, this note was to be credited on the $950 note, and the small note was given up, or was discharged, then he would receive about $885, or within $15 of the price agreed to be paid by the understanding of the 20th of August; and this, in all probability, made the amount by the computation of interest on the note in controversy. If this was the manner in which the matter was settled, then this is a full explanation, and

would account for sending to her attorneys for this note. When they failed to get the note in controversy, it is probable the note was drawn and executed by appellee for the $950, with the agreement that, when the note in controversy should be obtained, it should be credited on that note.

The witnesses who were present, and think this note was included in the settlement, would be easily misled, if such was the arrangement first agreed upon, when, if it had been deducted, appellee would have given her note for only $650, but when the note could not be had, the $950 note was given, and this note to be deducted, they may not have observed that the parties had changed their agreement, or may, when testifying, have forgotten the change, and only have remembered the first agreement. We apprehend that such mistakes, or such forgetfulness of witnesses, are not uncommon after two or three years have elapsed.

The jury evidently did not regard the evidence given by appellant, when he stated that he, at the time of the settlement, transferred an interest in the personal estate of his brother, worth $500, to appellee, as he did not explain how he acquired that interest; but as he testified to it as three shares, it seemed to imply that he claimed to have inherited and purchased them of the other heirs. We have seen that all the personal estate of his deceased brother went to his widow. The jury were warranted, therefore, in supposing, as was no doubt the truth, that no such interest did or could have passed from him to appellee. As he had none, he could transfer none to her.

The evidence shows that the two shares appellant sold to appellee were not worth more than about $600, if so much; and, even when he shall have paid the amount then due on the note sued on in this case, he will have received somewhere near $890 for them. He does not pretend to explain how it can be otherwise than by the theory that he sold to her, in addition, the interest in the personal estate of his brother; and having failed to show he had such an interest, his demand is certainly too great by the amount of the note in controversy

at that time. This, then, warranted the jury in believing the testimony of appellee when she testifies it was to be credited on the $950 note. The evidence was conflicting, and it was for the jury to weigh and determine the question. We see no reason to disturb their finding, and the judgment will therefore be affirmed.

*Judgment affirmed.*